1  Don Bivens (AZ Bar No. 005134)
2  don@donbivens.com
   Teresita T. Mercado (AZ Bar No. 020578)
3  teresita@donbivens.com
   **DON BIVENS, PLLC**
4  15169 N. Scottsdale Road, Suite 205
5  Scottsdale, Arizona, 85254
   Telephone: (602) 762-2661
6
7  Bart D. Cohen (*pro hac vice* forthcoming)
   **BAILEY GLASSER LLP**
8  1622 Locust Street
9  Philadelphia, PA 19103
   Phone: (215) 274-9420
10 bcohen@baileyglasser.com
11
   *Attorneys for Plaintiff and the Proposed Class*
12
13          **IN THE UNITED STATES DISTRICT COURT**

14              **FOR THE DISTRICT OF ARIZONA**

15 _____
   Andree Guest and Albert Dumas,                    Case No. _____
16 individually and on behalf of all others
   similarly situated,                               **CLASS ACTION COMPLAINT**
17
                         Plaintiffs,                 **JURY TRIAL DEMANDED**
18
19           v.

20 SimonMed Imaging, LLC,
21
                         Defendant.
22 _____

23          Plaintiffs Andree Guest and Albert Dumas, individually and on behalf of all others

24 similarly situated, bring this Class Action Complaint and allege the following against

25 defendant SimonMed Imaging, LLC ("SimonMed" or "Defendant"), based upon personal

26 knowledge with respect to Plaintiffs and on information and belief derived from, among

27 other things, investigation of counsel and review of public documents as to all other

28 matters.

**NATURE OF THE ACTION**

1.    Plaintiffs bring this class action against SimonMed for its failure to properly secure Plaintiffs' and Class Members' personally identifiable information ("PII") and personal health information ("PHI"). The PII and PHI may have included the following information: patients' and employees' full names, dates of birth, mailing addresses, telephone numbers, email addresses, and driver's licenses; patients' diagnostic images, passports, identification cards, Social Security numbers, health insurance details, medical records, diagnostic tests, provider ID numbers and incident reports; and employees' payroll information, corporate emails, and nondisclosure agreements.

2.    SimonMed failed to comply with industry standards to protect information systems that contain PII and PHI. Plaintiffs seek, among other things, orders requiring SimonMed to fully and accurately disclose the nature of the information that has been compromised and to adopt sufficient security practices and safeguards to prevent incidents like the disclosure (the "Data Breach") in the future.

3.    On February 10, 2025, a Facebook user reported that SimonMed's information technology systems had been disabled for three days the previous week. The following day, the website SuspectFile reported that the ransomware group Medusa had claimed responsibility for the breach of those systems by posting 45 "proof files" containing SimonMed data.

4.    SimonMed knowingly obtained sensitive PII and PHI and had a resulting duty to securely maintain that information in confidence. Plaintiffs and Class Members would not have provided their PII and PHI to SimonMed if they had known that SimonMed would not ensure that it used adequate security measures.

5.    Plaintiffs seek to remedy these harms individually and on behalf of all other similarly situated individuals whose PII and PHI were exposed in the Data Breach. Plaintiffs seek remedies including compensation for time spent responding to the Data Breach and other types of harm, free credit monitoring and identity theft insurance, and

1    injunctive relief including substantial improvements to SimonMed's data security policies

2    and practices.

3                                          **PARTIES**

4           6.     Plaintiff Andree Guest is a resident of Stockton, California. Ms. Guest was

5    a patient at a SimonMed facility in San Francisco in the summer of 2024. On February 13,

6    2025, Ms. Guest received a notice to the effect that data related to her 401k account had

7    been breached, and was required to reset her passcodes.

8           7.     Plaintiff Albert Dumas is a resident of Sarasota, Florida. Mr. Dumas has

9    been a SimonMed patient at three SimonMed facilities in Florida, on a total of at least 10

10   occasions beginning in 2019.

11          8.     Defendant SimonMed Imaging, LLC is an Arizona corporation, with its

12   principal place of business in Scottsdale, Arizona.

13                            **JURISDICTION AND VENUE**

14          9.     This Court has subject matter jurisdiction over this action pursuant to 28

15   U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at

16   least one member of the Class is a citizen of a state other than Arizona, there are more than

17   100 class members, and the aggregate amount in controversy exceeds $5,000,000

18   exclusive of interests and costs.

19          10.    This Court has personal jurisdiction over SimonMed because SimonMed

20   maintains its principal place of business in Arizona and conducts substantial business in

21   this District through its principal place of business; engaged in the conduct at issue herein

22   from and within this District; and otherwise has substantial contacts with this District.

23          11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and because

24   SimonMed resides in this District, and this District is where a substantial part of the acts,

25   omissions, and events giving rise to Plaintiffs' claims occurred.

26

27

28

1

## FACTUAL ALLEGATIONS

2

**The Data Breach**

3        12.    SimonMed claims to be the "largest outpatient physician radiology group in

4    the country."[1] SimonMed operates locations in Arizona, California, Colorado, Florida,

5    Illinois, Kentucky, Nevada, New York, Texas, and Wisconsin.[2]

6        13.    Due to the nature of the services it provides, SimonMed acquires and

7    electronically stores PII and PHI. SimonMed was therefore required to ensure that PII and

8    PHI were not disclosed or disseminated to unauthorized third parties without Plaintiffs'

9    and Class Members' express written consent.

10        14.    On February 10, 2025, an Arizona SimonMed patient reported on Facebook

11    that "[l]ast week their IT system was down for three days. No appointments no services.

12    This week their IT services are so slow they can't create new patient charts. No services

13    available. Are you kidding me?"[3]

14        15.    On February 11, 2025, SuspectFile reported that the ransomware group

15    Medusa had claimed responsibility for the breach of those systems by posting 45 "proof

16    files" containing SimonMed data, and claimed to have exfiltrated over 200 gigabytes of

17    data from the systems. SuspectFile reviewed the proof files, and determined that those

18    alone contained patients' and employees' full names, dates of birth, mailing addresses,

19    telephone numbers, email addresses, and driver's licenses; patients' diagnostic images,

20    passports, identification cards, Social Security numbers, health insurance details, medical

21    records, diagnostic tests, provider ID numbers and incident reports; and employees'

22    payroll information, corporate emails, and nondisclosure agreements. SuspectFile also

23

24

25    [1] SimonMed Imaging, available at https://www.simonmed.com/ (last visited Feb. 14,
26    2025).

[2] SimonMed Imaging, available at https://www.simonmed.com/locations/ (last visited
27    Feb. 14, 2025).

[3] Surprise AZ, available at https://www.facebook.com/groups/surpriseaz1/posts/
28    2749273415259176/ (last visited Feb. 14, 2025).

determined that the proof files alone contained the results of over one million mammography exams dating back to 2007.[4]

16.    SuspectFile further reported having contacted multiple SimonMed officers to request a statement, beginning on February 8. As of February 11, none had responded.[5]

17.    SimonMed has not disclosed any details of the Data Breach. Without such disclosure, questions remain as to the full extent of the Data Breach, the actual data accessed and compromised, and what measures, if any, SimonMed has taken to secure the PII and PHI still in its possession. Plaintiffs seek to determine the scope of the Data Breach and the information involved, obtain relief that redresses the harm to Plaintiffs' and Class Members' interests, and ensure that SimonMed has proper measures in place to prevent similar incidents from occurring in the future.

### SimonMed's Security Representations

18.    SimonMed's website includes a 2022 "Notice of Privacy Practices," which informs patients of their right to "[g]et a list of who we've shared your information with."[6]

19.    That Privacy Policy includes a list of SimonMed's "uses and disclosures" of patients' information.[7] That list does not account for the disclosure of PII and PHI to unauthorized outsiders.

20.    SimonMed's website also includes a 2021 version of its Notice of Privacy Practices, which includes the following under the heading "Our Responsibilities":

- We are required by law to maintain the privacy and security of your protected health information.

---

[4] Exclusive: Data breach at SimonMed, available at https://www.suspectfile.com/exclusive-data-breach-at-simonmed-the-medusa-group-demands-a-1-million-ransom-exposing-at-least-132-173-people-including-patients-and-employees/ (last visited Feb. 14, 2025).

[5] *Id.*

[6] Notice of Privacy Practices, available at https://www.simonmed.com/wp-content/uploads/2023/09/SM-Privacy-practice-trifold-Eng-11-22.pdf (last visited Feb. 14, 2025).

[7] *Id.*

- We will let you know promptly if a breach occurs that may have compromised the privacy or security of your information.
- We must follow the duties and privacy practices described in this notice and give you a copy of it.
- We will not use or share your information other than as described here unless you tell us we can in writing.[8]

**SimonMed Stores Plaintiffs' and Class Members' PII and PHI**

21.    SimonMed obtained and stored a massive amount of PII and PHI. As a condition of using SimonMed's services, it required that clients entrust it with highly confidential PII and PHI.

22.    By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' PII and PHI, SimonMed assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' PII and PHI from disclosure.

23.    Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI, and relied on SimonMed to keep this information confidential and securely maintained, and to make only authorized disclosures of this information.

**PII and PHI are Valuable and Subject to Unauthorized Disclosure**

24.    SimonMed was aware that the PII and PHI it collected are highly sensitive and of significant value to those who would use it for wrongful purposes.

25.    PII and PHI are valuable commodities to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and medical and financial fraud.[9] Indeed, a robust illegal market

---

[8] Notice of Privacy Practices, available at https://www.simonmed.com/wp-content/uploads/2022/04/SimonMed_Imaging_-_Notice_of_Privacy_Practices_eff_04.01.2021.pdf (last visited Feb. 14, 2025).

[9] Federal Trade Commission, What To Know About Identity Theft (available at https://consumer.ftc.gov/articles/what-know-about-identity-theft) (last accessed Feb. 14, 2025).

**DON BIVENS, PLLC**
SCOTTSDALE QUARTER
15169 N. Scottsdale Road
Suite 205
Scottsdale, AZ 85254

exists in which criminals openly post stolen PII and PHI on multiple underground websites, commonly referred to as the "dark web."

26.    The ramifications of SimonMed's failure to keep Plaintiffs' and Class Members' PII and PHI secure are long-lasting and severe. Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for months or even years thereafter.

27.    Further, criminals often trade stolen PII and PHI for years following a breach. Cybercriminals can post stolen PII and PHI on the internet, thereby making such information publicly available.

28.    SimonMed knew, or should have known, the importance of safeguarding PII and PHI entrusted to it and of the foreseeable consequences if its data security systems were breached. This includes the significant costs that would be imposed on Plaintiffs and Class Members because of a breach. SimonMed failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

**The Data Breach Exposed Plaintiffs and Class Members
to Identity Theft and Out-of-Pocket Losses**

29.    Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of their rights. They are incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

30.    Despite all the publicly available knowledge of known and foreseeable consequences of the disclosure of PII and PHI, SimonMed's policies and practices with respect to maintaining the security of Plaintiffs' and Class Members' PII and PHI were reckless, or at the very least, negligent.

31.    In virtually all contexts, the expenditure of time has consistently been recognized as compensable, and for many people, it is the basis on which they are compensated. Plaintiffs and Class Members should be compensated for the time they have expended because of SimonMed's misfeasance.

32.     Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[10]

33.     As a result of the wide variety of injuries that can be traced to the Data Breach, Plaintiffs and Class Members have and will continue to suffer financial loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

    a.   losing the inherent value of their PII and PHI;

    b.   identity theft and fraud resulting from the theft of their PII and PHI;

    c.   costs associated with the detection and prevention of identity theft;

    d.   costs associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

    e.   lowered credit scores resulting from credit inquiries following fraudulent activities;

    f.   costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to mitigate and address the actual and future consequences of the Data Breach, including discovering fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposing withdrawal and purchase limits on compromised accounts, and the stress, nuisance, and annoyance of dealing with the repercussions of the Data Breach; and

    g.   the continued imminent injury flowing from potential fraud and identity theft posed by their PII and PHI being in the possession of one or more unauthorized third parties.

### SimonMed's Lax Security Violates HIPAA

34.     SimonMed had a non-delegable duty to ensure that all PHI it collected and stored was secure.

35.     SimonMed is bound by HIPAA (*see* 45 C.F.R. § 160.102) and, as a result, is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160

---

[10] 2014 LexisNexis True Cost of Fraud Study (available at https://www.lexisnexis.com/risk/downloads/assets/true-cost-fraud-2014.pdf) (last accessed Jan. 18, 2024).

and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

36.    These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. See 45 C.F.R. § 160.103.

37.    HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

38.    HIPAA requires that SimonMed implement appropriate safeguards for this information.

39.    Despite these requirements, SimonMed failed to comply with its duties under HIPAA and its own Privacy Practices. In particular, SimonMed failed to:

    a.  maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

    b.  adequately protect Plaintiffs' and Class Members' PHI;

    c.  ensure the confidentiality and integrity of electronic PHI created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

    d.  implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

    e.  implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

    f.  implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

    g.  protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3);

h.  ensure compliance with the electronic PHI security standard rules by its workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

i.  train all members of its workforce effectively on the policies and procedures with respect to PHI as necessary and appropriate for the members of its workforce to carry out their responsibilities and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b)

40.     SimonMed failed to comply with its duties under HIPAA despite being aware of the risks associated with unauthorized access to Plaintiffs' and Class Members' PHI.

**SimonMed Violated FTC Guidelines**

41.     The Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibited SimonMed from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' PII and PHI is an "unfair practice" in violation of the FTC Act. *See, e.g., Fed. Trade Comm'n v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

42.     The FTC has promulgated several guides for businesses that reflect the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[11]

43.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established data security guidelines for businesses.[12] The guidelines reflect that businesses should protect the PII and PHI that they keep; properly dispose of PII and PHI that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

---

[11] Federal Trade Commission, Start With Security: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf) (last accessed Feb. 14, 2025).

[12] Federal Trade Commission, Protecting Personal Information: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf) (last accessed Feb. 14, 2025).

**DON BIVENS, PLLC**
SCOTTSDALE QUARTER
15169 N. Scottsdale Road
Suite 205
Scottsdale, AZ 85254

44.     The FTC further recommends that companies not maintain PII and PHI longer than is needed for authorization of a transaction; limit access to confidential data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[13]

45.     The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

46.     SimonMed failed to properly implement basic data security practices. SimonMed's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

47.     SimonMed was at all times fully aware of its obligation to protect Plaintiffs' and Class Members' PII and PHI because of its position as a healthcare services provider. SimonMed was also aware of the significant repercussions that would result from its failure to do so.

## CLASS ACTION ALLEGATIONS

48.     Pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek certification of a Class as defined below:

All persons in the United States and its territories whose PII and/or PHI was compromised in the Data Breach.

49.     Excluded from the Class are SimonMed, any entity in which SimonMed has a controlling interest, and SimonMed's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer

---

[13] FTC, *Start With Security*, *supra*.

presiding over this matter, members of their immediate family, and members of their judicial staff.

50.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class as additional information becomes available to Plaintiffs.

51.     **Numerosity:** The Class Members are so numerous that individual joinder of all Class Members is impracticable. SuspectFile reported that the Data Breach affected at least 100,000 individuals. All Class Members' names and addresses are available from SimonMed's records, and Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

52.     **Commonality:** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.  Whether and to what extent SimonMed had a duty to protect the PII and PHI of Class Members;

b.  Whether SimonMed was negligent in collecting and storing Plaintiffs' and Class Members' PII and PHI;

c.  Whether SimonMed had duties not to disclose the PII and PHI of Class Members to unauthorized third parties;

d.  Whether SimonMed took reasonable steps and measures to safeguard Plaintiffs' and Class Members' PII and PHI;

e.  Whether SimonMed failed to adequately safeguard the PII and PHI of Class Members;

f.  Whether SimonMed failed to implement and maintain reasonable security policies and practices appropriate to the nature and scope of the PII and PHI compromised in the Data Breach;

g.  Whether SimonMed adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII and PHI had been compromised;

h.  Whether Plaintiffs and Class Members are entitled to actual damages, statutory damages, and/or punitive damages because of SimonMed's wrongful conduct;

i. Whether Plaintiffs and Class Members are entitled to restitution because of SimonMed's wrongful conduct;

j. Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm they face because of the Data Breach; and

k. Whether Plaintiffs and Class Members are entitled to identity theft protection for their respective lifetimes.

53.    **Typicality:** Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' PII and PHI, like that of every other Class Member, was disclosed by SimonMed. Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through SimonMed's common misconduct. Plaintiffs are advancing the same claims and legal theories individually and on behalf of all other Class Members, and there are no defenses that are unique to Plaintiff. Plaintiffs' claims and Class Members' claims arise from the same operative facts and are based on the same legal theories.

54.    **Adequacy:** Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class and are committed to pursuing this matter against SimonMed to obtain relief for the Class. Plaintiffs have no conflicts of interest with the Class. Plaintiffs' counsel are competent and experienced in litigating class actions, including extensive experience in data breach litigation. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

55.    **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because SimonMed has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. SimonMed's policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on SimonMed's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

56.    **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like SimonMed. Even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

57.    The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because SimonMed would necessarily gain an unconscionable advantage in non-class litigation, since SimonMed would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by Class Members and will establish the right of each Class Member to recover on the causes of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

58.    The litigation of Plaintiffs' claims is manageable. SimonMed's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with maintenance of this lawsuit as a class action.

59.    Adequate notice can be given to Class Members directly using information maintained in SimonMed's records.

60.    Unless a class-wide injunction is issued, SimonMed may continue to maintain inadequate security with respect to the PII and PHI of Class Members, SimonMed may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and SimonMed may continue to act unlawfully as set forth in this Complaint.

61.    SimonMed has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate.

## COUNT I

### NEGLIGENCE
### (on behalf of Plaintiffs and the Class)

62.    Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

63.    SimonMed knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' PII and PHI, and had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. That duty included, among other things, designing, maintaining, and testing SimonMed's security protocols to ensure that Plaintiffs' and Class Members' PII and PHI in SimonMed's possession was adequately secured and protected, that Plaintiffs' and Class Members' PII and PHI on SimonMed's networks was not accessible to criminals without authorization, and that SimonMed's employees tasked with maintaining such information were adequately trained on security measures regarding the security of Plaintiffs' and Class Members' PII and PHI.

64.    Plaintiffs and Class Members entrusted their PII and PHI to SimonMed with the understanding that SimonMed would safeguard their information, use their PII and PHI for business purposes only, and not disclose their PII and PHI to unauthorized third parties.

65.    SimonMed knew or reasonably should have known that a failure to exercise due care in the collecting, storing, and using Plaintiffs' and Class Members' PII and PHI involved an unreasonable risk of harm to Plaintiffs and Class Members.

66.     SimonMed also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiffs' and Class Members' PII and PHI.

67.     A breach of security, unauthorized access, and resulting injury to Plaintiffs and Class Members was reasonably foreseeable, particularly in light of prior data breaches and disclosures prevalent in today's digital landscape.

68.     Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. SimonMed knew or should have known of the inherent risks in collecting and storing Plaintiffs' and Class Members' PII and PHI, the critical importance of providing adequate security of that information, the necessity for encrypting PII and PHI stored on SimonMed's systems, and that it had inadequate IT security protocols in place to secure Plaintiffs' and Class Members' PII and PHI.

69.     SimonMed's misconduct created a foreseeable risk of harm to Plaintiffs and Class Members. SimonMed's misconduct included, but was not limited to, failure to take the steps and opportunities to prevent the Data Breach as set forth herein.

70.     Plaintiffs and Class Members had no ability to protect their PII and PHI that was in SimonMed's possession.

71.     SimonMed was in a position to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

72.     SimonMed had, and continues to have, a duty to timely disclose that Plaintiffs' and Class Members' PII and PHI within its possession was compromised and precisely the type(s) of information that were compromised.

73.     SimonMed had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiffs' and Class Members' PII and PHI.

74.     SimonMed systematically failed to provide adequate security for data in its possession.

75.     SimonMed, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' PII and PHI within its possession.

76. SimonMed, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiffs' and Class Members' PII and PHI.

77. SimonMed, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiffs and Class Members that the PII and PHI within its possession might have been compromised and precisely the type of information compromised.

78. SimonMed's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' PII and PHI to be compromised.

79. But for all of SimonMed's acts of negligence detailed above, including allowing cyber criminals to access its systems containing Plaintiffs' and Class Members' PII and PHI would not have been compromised.

80. Plaintiffs never transmitted their own unencrypted PII and PHI over the internet or any other unsecured source.

81. Following the Data Breach, Plaintiffs' PII and PHI has been seized by unauthorized third parties who are now free to exploit and misuse that PII and PHI, and Plaintiffs are unable to prevent its further dissemination. Plaintiffs' PII and PHI are forever compromised.

82. But for the Data Breach, Plaintiffs would not have incurred the loss and publication of their PII and PHI and other injuries.

83. There is a close causal connection between SimonMed's failure to implement security measures to protect Plaintiffs' and Class Members' PII and PHI and the harm suffered, or risk of imminent harm suffered by Plaintiffs and Class Members. Plaintiffs' and Class Members' PII and PHI were accessed and compromised as the proximate result of SimonMed's failure to exercise reasonable care in safeguarding such PII and PHI by adopting, implementing, and maintaining appropriate security measures and encryption.

84.    Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, loss of privacy, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

85.    As a result of SimonMed's negligence and breach of duties, Plaintiffs and Class Members are in danger of imminent harm in that their PII and PHI, which are still in the possession of third parties, will be used for fraudulent purposes.

86.    Plaintiffs seek the award of actual damages on behalf of themselves and the Class.

87.    Plaintiffs seek injunctive relief on behalf of the Class in the form of an order (1) compelling SimonMed to institute appropriate data collection and safeguarding methods and policies with regard to PII and PHI; and (2) compelling SimonMed to provide detailed and specific disclosure of what types of PII and PHI have been compromised as a result of the data breach.

## COUNT II

### BREACH OF EXPRESS CONTRACT
### (on behalf of Plaintiffs and the Class)

88.    Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

89.    Plaintiffs and Class Members entered into valid and enforceable contracts through which they paid money to SimonMed in exchange for services. Those contracts included promises by SimonMed to secure, safeguard, and not disclose Plaintiffs' and Class Members' PII and PHI.

90.    SimonMed's Notice of Privacy Practices memorialized the rights and obligations of SimonMed and its affiliates' patients. This document was, upon information and belief, provided to Plaintiffs and Class Members in a manner in which it became part of the agreement for services..

91.     In the Notice of Privacy Practices, SimonMed commits to protecting the privacy and security of PII and PHI and promises to never share Plaintiffs' and Class Members' PII and PHI except under certain limited circumstances.

92.     Plaintiffs and Class Members fully performed their obligations under their contracts with SimonMed.

93.     However, SimonMed did not secure, safeguard, and/or keep private Plaintiffs' and Class Members' PII and PHI. SimonMed therefore breached its contracts with Plaintiffs and Class Members.

94.     SimonMed allowed third parties to access, copy, and/or exfiltrate Plaintiffs' and Class Members' PII and PHI without permission. SimonMed therefore breached the Notice of Privacy Practices to Plaintiffs and Class Members.

95.     SimonMed's failure to satisfy its confidentiality and privacy obligations, specifically those arising under the FTCA, HIPAA, and applicable industry standards, diminished the value of the services SimonMed provided to Plaintiffs and Class Members.

96.     As a result, Plaintiffs and Class Members have been harmed, damaged, and/or injured as described herein, including by SimonMed's failure to fully perform its part of its bargain with Plaintiffs and Class Members.

97.     As a direct and proximate result of SimonMed's conduct, Plaintiffs and Class Members suffered and will continue to suffer damages in an amount to be proven at trial.

## COUNT III

### INVASION OF PRIVACY
### (on behalf of Plaintiffs and the Class)

98.     Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

99.     Plaintiffs and Class Members had a reasonable expectation of privacy in the PII and PHI SimonMed mishandled.

100.    SimonMed's conduct as alleged above intruded upon Plaintiffs' and Class Members' seclusion under common law.

101.    By intentionally failing to keep Plaintiffs' and Class Members' PII and PHI safe, and by intentionally misusing and/or disclosing said information to unauthorized parties for unauthorized use, SimonMed intentionally invaded Plaintiffs' and Class Members' privacy by:

a.    Intentionally and substantially intruding into Plaintiffs' and Class Members' private affairs in a manner that identifies Plaintiffs and Class Members and that would be highly offensive and objectionable to an ordinary person;

b.    Intentionally publicizing private facts about Plaintiffs and Class Members, which is highly offensive and objectionable to an ordinary person; and

c.    Intentionally causing anguish or suffering to Plaintiffs and Class Members.

102.    SimonMed knew that an ordinary person in Plaintiffs' or Class Members' position would consider SimonMed's intentional actions highly offensive and objectionable.

103.    SimonMed invaded Plaintiffs' and Class Members' right to privacy and intruded into Plaintiffs' and Class Members' private affairs by intentionally misusing and/or disclosing their PII and PHI without their informed, voluntary, affirmative, and clear consent.

104.    SimonMed intentionally concealed from and delayed reporting to Plaintiffs and Class Members a security incident that resulted in the misuse and/or disclosure of their PII and PHI without their informed, voluntary, affirmative, and clear consent.

105.    As a proximate result of such intentional misuse and disclosures, Plaintiffs' and Class Members' reasonable expectations of privacy in their PII and PHI was unduly frustrated and thwarted. SimonMed's conduct amounted to a substantial and serious invasion of Plaintiffs' and Class Members' protected privacy interests causing anguish and suffering such that an ordinary person would consider SimonMed's intentional actions or inaction highly offensive and objectionable.

106.    In failing to protect Plaintiffs' and Class Members' PII and PHI, and in intentionally misusing and/or disclosing their PII and PHI, SimonMed acted with intentional malice and oppression and in conscious disregard of Plaintiffs' and Class Members' rights to have such information kept confidential and private. Plaintiffs, therefore, seek an award of damages on behalf of themselves and the Class.

107.    As a direct and proximate result of SimonMed's conduct, Plaintiffs and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

## COUNT IV

### UNJUST ENRICHMENT
### (on behalf of Plaintiffs and the Class)

108.    Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

109.    Plaintiffs and Class Members have an interest, both equitable and legal, in their PII and PHI that was conferred upon, collected by, and maintained by SimonMed and that was stolen in the Data Breach.

110.    SimonMed benefitted from the conferral upon it of Plaintiffs' and Class Members' PII and PHI, and by its ability to retain and use that information. SimonMed understood that it so benefited.

111.    SimonMed also understood and appreciated that Plaintiffs' and Class Members' PII and PHI was private and confidential and that its value depended upon SimonMed maintaining its privacy and confidentiality.

112.    But for SimonMed's willingness and commitment to maintain its privacy and confidentiality, that PII and PHI would not have been transferred to and entrusted with SimonMed. Further, if SimonMed had disclosed that its data security measures were inadequate, SimonMed would not have been permitted to continue in operation by regulators and the financial marketplace.

113.    As a result of SimonMed's wrongful conduct as alleged in this Complaint (including, among other things, their failure to employ adequate data security measures, their continued maintenance and use of Plaintiffs' and Class Members' PII and PHI without having adequate data security measures, and its other conduct facilitating the theft of that PII and PHI), SimonMed has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and Class Members.

114.    SimonMed's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compilation and use of Plaintiffs' and Class Members' sensitive PII and PHI, while at the same time failing to maintain that information secure from intrusion and theft by hackers.

115.    Under the common law doctrine of unjust enrichment, it is inequitable for SimonMed to be permitted to retain the benefits it received, and is still receiving, without justification, from the use of Plaintiffs' and Class Members' PII and PHI in an unfair and unconscionable manner. SimonMed's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

116.    The benefit conferred upon, received, and enjoyed by SimonMed was not conferred officiously or gratuitously, and it would be inequitable and unjust for SimonMed to retain the benefit.

## COUNT V

**VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT**
**A.R.S. §§ 44-1521, et seq.**
**(on behalf of Plaintiffs and the Class)**

117.    Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

118.    SimonMed sold Plaintiffs and Class Members "merchandise" as that term is defined by A.R.S. § 44-1521, in the form of services, including healthcare services, as well as the sale of objects, wares, goods, and commodities at outlets where SimonMed and its affiliates accepted payment cards in point-of-sale transactions.

119.   Section 44-1522 of the Arizona Consumer Fraud Act provides:

> The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby.

See A.R.S. § 44-1522(A).

120.   SimonMed used deception, used a deceptive act or practice, and fraudulently omitted and concealed material facts in connection with the sale or advertisement of that merchandise in violation of A.R.S. § 44-1522(A).

121.   SimonMed omitted and concealed material facts, which it knew about and had the duty to disclose—namely, SimonMed's inadequate privacy and security protections for Plaintiffs' and Class Members' PII and PHI. SimonMed omitted and concealed those material facts even though in equity and good conscience those facts should have been disclosed and did so with the intent that others would rely on the omission, suppression, and concealment.

122.   The concealed facts are material in that they are logically related to the transactions at issue and rationally significant to the parties in view of the nature and circumstances of those transactions.

123.   Plaintiffs do not allege any claims based on any affirmative misrepresentations by SimonMed; rather, Plaintiffs allege that SimonMed omitted, failed to disclose, and concealed material facts and information as alleged herein, despite its duty to do so.

124.   SimonMed knew or should have known that its computer system and data security practices were inadequate to safeguard Plaintiffs' and Class Members' PII and PHI, and that the risk of a data breach or theft was highly likely. SimonMed's actions in

engaging in these deceptive acts and practices were negligent, knowing and willful, and wanton and reckless with respect to the rights of Plaintiffs and Class Members.

125.    Specifically, SimonMed failed to comply with the standards outlined by the FTC and HIPAA regarding the protection of PII and PHI. As a healthcare institution, SimonMed was or should have been aware of these standards. SimonMed's data security systems did not comply with FTC guidelines or HIPAA's rules and, as a result, were operating below the minimum standards set forth.

126.    Plaintiffs and Class Members were ignorant of the truth and relied on the concealed facts and incurred damages as a consequent and proximate result.

127.    Plaintiffs and Class Members seek all available relief under A.R.S. §§ 4421, *et seq.*, including, but not limited to, compensatory damages, punitive damages, injunctive relief, and attorneys' fees and costs.

## COUNT VI

### INJUNCTIVE/DECLARATORY RELIEF
### (on behalf of Plaintiffs and the Class)

128.    Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

129.    SimonMed owes a duty of care to Plaintiffs and Class Members requiring it to adequately secure PII and PHI.

130.    SimonMed still stores Plaintiffs' and Class Members' PII and PHI.

131.    Since the Data Breach, SimonMed has announced no specific changes to its data security infrastructure, processes, or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and, thereby, prevent similar incidents from occurring in the future.

132.    SimonMed has not satisfied its legal duties to Plaintiffs and Class Members.

133.    Actual harm has arisen in the wake of the Data Breach regarding SimonMed's duties of care to provide security measures to Plaintiffs and Class Members. Further, Plaintiffs and Class Members are at risk of additional or further harm due to the

exposure of their PII and PHI, and SimonMed's failure to address the security failings that led to that exposure.

134. Plaintiff, therefore, seeks a declaration: (a) that SimonMed's existing security measures do not comply with its duties of care to provide adequate security; and (b) that to comply with its duties of care, SimonMed must implement and maintain reasonable security measures, including, but not limited to, the following:

a. ordering that SimonMed engage third-party security auditors as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on SimonMed's systems on a periodic basis, and ordering SimonMed to promptly correct any problems or issues detected by such third-party security auditors;

b. ordering that SimonMed engage third-party security auditors and internal personnel to run automated security monitoring;

c. ordering that SimonMed audit, test, and train its security personnel regarding any new or modified procedures;

d. ordering that SimonMed segment PII and PHI by, among other things, creating firewalls and access controls so that if one area of SimonMed's system is compromised, hackers cannot gain access to other portions of SimonMed's system;

e. ordering that SimonMed purge, delete, and destroy in a reasonably secure manner PII and PHI not necessary for its provision of services;

f. ordering that SimonMed conduct regular computer system scanning and security checks; and

g. ordering that SimonMed routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs, individually and on behalf of all others similarly situated, pray for relief as follows:

a. for an Order certifying the Class as defined herein, and appointing Plaintiffs and their counsel to represent the Class;

DON BIVENS, PLLC
SCOTTSDALE QUARTER
15169 N. Scottsdale Road
Suite 205
Scottsdale, AZ 85254

    b.  for equitable relief enjoining SimonMed from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' PII and PHI, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiffs and Class Members;

    c.  for equitable relief compelling SimonMed to use appropriate cybersecurity methods and policies with respect to PII and PHI collection, storage, and protection, and to disclose with specificity to Class Members the types of PII and PHI compromised;

    d.  for an award of damages, including actual, nominal, consequential, enhanced compensatory, and punitive damages, as allowed by law in an amount to be determined;

    e.  for an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

    f.  for prejudgment interest on all amounts awarded; and

    g.  such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED this 18th day of February, 2025.


                                 /s/  Teresita T. Mercado
                               Don Bivens
                               Teresita T. Mercado
                               **DON BIVENS, PLLC**
                               15169 Scottsdale Road, Suite 205
                               Scottsdale, AZ 85254

                               Bart D. Cohen (*pro hac vice* forthcoming)
                               **BAILEY GLASSER LLP**
                               1622 Locust Street
                               Philadelphia, PA  19103

                               *Attorneys for Plaintiff and the Class*